## WALKER v. STONE.

1. **Public Lands: PRE-EMPTION.** A person claiming under the pre-emption law must make an actual settlement in person, and he cannot recover damages from one whom he has employed to make improvements, and who, in violation of the conditions of his employment, has acquired for himself a homestead in the land.

*Appeal from O'Brien Circuit Court.*

WEDNESDAY, APRIL 3.

THE plaintiff averred in the petition that in June, 1871, he was about to take and occupy a certain tract of government land, as a pre-emption, under the laws of the United States, and that he made a verbal agreement with the defendant, by which the defendant was to do some breaking on said land, and to take care of and protect for plaintiff his rights in and to said land, and to notify plaintiff of any and all claims which might be made on or to said premises, as against plaintiff, during the time plaintiff might be absent therefrom; that thereupon plaintiff made pre-emption of, and took said land under said pre-emption laws, and paid to defendant ten dollars on said contract; that after commencing the performance of said contract, and while pretending that he was carrying out the conditions thereof, the defendant, without

plaintiff's knowledge or consent, and with intent to cheat and wrong the plaintiff, did fraudulently procure to himself a homestead right to said premises, and destroyed plaintiff's rights thereto, to the damage of the plaintiff in the sum of one thousand dollars.

The defendant denied the alleged contract, and averred that the same was illegal and void, and in violation of the laws of the United States, governing pre-emptions.

The cause was referred. The referee reported that plaintiff should have judgment for two hundred dollars.

The report of the referee was approved by the court, and a judgment was rendered accordingly. Defendant appeals.

*D. A. W. Perkins* and *Chase & Taylor*, for appellant.

*Warren Walker, pro se.*

ROTHROCK, CH. J.—The testimony of the plaintiff, as it appears in the abstract, is as follows:

"In the month of June, 1871, I came to O'Brien county to procure pre-emption claims. At that time I entered into a verbal contract with defendant, whereby he was to do some work on my claim when procured, he agreeing to do some plowing and watch the claim for me. In case of any trouble, or in case of any one settling on the claim, or in case that he deemed it in any way in danger, he was to notify me by mail in case there was time, and if there was anything urgent, was to telegraph me. Mr. S. G. Sutter was to notify defendant upon what claims I made pre-emption, as I had several in view; defendant was then to perform his part of the contract, and I was to pay him a reasonable compensation. I afterwards made pre-emption at the Sioux City Land Office, upon the southeast quarter of section eight (8), township ninety-six (96), range forty-two (42), O'Brien county, being the same land where defendant now resides. Defendant was afterwards notified of the numbers of the land. I again returned to O'Brien county in October, 1871, and made some improve-

1. PUBLIC lands : pre-emption.

ments on the land, and stayed there part of the time; took my meals on the claim at this time. Defendant advised me that I need not remain, and to wait until spring, and that the claim was all right, and that there would not likely be any trouble, and in case there was he would notify me immediately. As soon as I arrived at State Centre, I wrote to defendant. I again saw defendant at State Centre, Iowa, in January, 1872. We talked about the claim. He said it was all right, and there would be no trouble before spring. I paid him ten dollars. He said he had charged other parties five dollars for doing breaking on their claims, but that he had taken extra pains to watch mine; that he had found my claim all right in the Land Office at Sioux City, and that it was all right at the present time. I afterwards ascertained that he had filed a homestead on the claim in November, 1871. I came up to O'Brien county in February, 1872, and found that defendant had filed a homestead on the land. Defendant never notified me but that he was acting for me in good faith. I supposed, from defendant's statements, that he was watching the claim. The land at that time was worth one thousand dollars. Defendant never remunerated me for the money paid him, nor for the land in question."

*Cross-examination.*—"I stated that I had made some improvements on the claim, and stayed there part of the time. The improvements were that I dug a well, and my staying there consisted of camping out. We had a wagon, and cooked our meals on the ground, and only the blue sky and the wagon for a covering. We were there in this way one or two days, and stayed there one night. The well I dug was only a few feet from the bank of the creek, where there was water; the well was two or three feet deep. I did some work in June, 1871, on the claim, and took dinner on it at that time. This work consisted in commencing the erection of a sod shanty, by piling up a few sods, in order to commence an improvement before going to the United States Land Office. I never completed the sod shanty, for the reason that prior to

Walker v. Stone.

the time I was required to have a building erected thereon it was homesteaded by the defendant. I claimed my residence in O'Brien county from June, 1871; was stopping temporarily in State Centre, until I came up to O'Brien county in 1872."

Conceding that the contract was made as plaintiff claims, we are clearly of the opinion that he cannot recover damages for its breach.

The pre-emption law requires that any one claiming its benefits shall make an actual settlement, in person, upon the land claimed. There must be an actual settlement, in person, before any right attaches. United States Rev. Statutes, §§ 2259, 2264.

This cannot be done by an agent, nor by proxy. To give the acts of the plaintiff the most liberal construction, his settlement and improvements were merely colorable. Taking dinner on the land in 1871, and piling up a few sods, and staying one night and one or two days, in a covered wagon, and digging a well two or three feet deep on the land in October, 1871, may be such a settlement as would likely be respected by others seeking pre-emption claims, but that it can be made the basis of a legal claim cannot be admitted.

If, then, plaintiff had no valid claim upon the land, no legal fraud was committed by the defendant. The plaintiff could not be defrauded of that which he did not have. However reprehensible the conduct of the defendant may have been in homesteading the land, yet it is one of those moral delinquencies which are left by the law without remedy.

The abstract purports to contain all the evidence. The plaintiff, in his argument, insists that in this the abstract is incorrect. If this be true, the plaintiff should have prepared an additional abstract, with the proper corrections.

Believing that the case, as made by the plaintiff in the petition, and in his testimony, did not warrant the conclusion reached by the referee and the court below, the judgment is

REVERSED.